Thomas N. PARKER, Appellant,

v.

STATE of Indiana, Appellee.

No. 64S00–8801–CR–19.

Supreme Court of Indiana.

Jan. 24, 1989.

Joanne Tapocsi, Deputy Public Defender, Valparaiso, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a conviction of appellant of four counts of Burglary, Class B felonies, for which he received sentences

of ten (10) years each, which were enhanced by ten (10) years each for aggravating circumstances. He also was convicted of Robbery, a Class B felony, for which he received a sentence of ten (10) years, which was enhanced by ten (10) years for aggravating circumstances. The sentences were to run concurrently.

The facts are: The four burglaries and the robbery each occurred on separate occasions but the charges were combined for the purpose of trial. The factual situations regarding the various crimes are not at issue here. Therefore the detailed facts of each burglary will not be recited. Appellant does raise the question as to whether he was armed during the robbery. That issue will be discussed at the proper portion of the opinion.

Cindy Garris was known by the police to be a girl friend of appellant. Police officer Kaiser contacted Garris and asked her to come to the police station to discuss appellant. At the police station, Garris readily informed the police of various crimes which appellant had disclosed to her, including burglaries and the robbery in question.

An undercover police officer, Jamie Bryan, was equipped with a recording device which was known to Garris. The two women then drove around the area where Garris pointed out the homes of Larry Brown, Jim Harvey, Bruce Hall, and Dan Terry, all of whom were known to Garris as confederates of appellant. By prearrangement with other police officers, they then drove to appellant's home where they picked him up and drove to a prearranged location where appellant was arrested while the two women were out of the car on the pretext of purchasing cigarettes.

After his arrest, appellant was taken to the police station where he requested permission to speak with Garris. Police officers placed recording equipment on Garris's person and she was permitted to visit with appellant. During the visitation, appellant asked Garris to contact Hall to arrange bond and also informed her that she would pick up "stuff" from Hall. Garris and Officer Bryan then went to Hall's home. While there, Hall gave Garris a brown paper sack containing a videocassette recorder which appellant had taken in a burglary.

Appellant claims the trial court erred in admitting evidence of the recorded conversation between Garris and him at the police station after his arrest. Appellant claims this recorded interview violated his right to counsel under the Sixth Amendment of the United States Constitution, citing *Powell v. Alabama* (1932), 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158. He also cites *Massiah v. United States* (1964), 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 for the proposition that police cannot obtain information by illegal practices by using a non-police officer as the go-between.

■ Even if we would assume for the sake of argument that the conduct of the police officers in using Garris to obtain information from appellant while he was in custody was improper conduct, such conduct does not automatically require a reversal. The short conversation between Garris and appellant following appellant's arrest disclosed only that appellant wished Garris to contact Hall in order to make bail. He also did state that Hall would give Garris "stuff." When Garris contacted Hall, he did in fact give her a videocassette recorder which appellant had stolen.

However, as above pointed out, Garris had already informed the police officers of the various burglaries and the armed robbery which appellant had perpetrated, and she had pointed out the homes of his confederates, including the home of Bruce Hall. Therefore the minimal information which was received by reason of this contact was already known to police from other sources. Therefore the contact, even if improper, did not result in interrogation through which the police obtained information detrimental to appellant which they would not have otherwise obtained. Appellant has demonstrated no reversible error by reason of the police conduct.

■ Appellant claims the State's use of the information obtained through Garris which led to the evidence from Hall was fruit of the poison tree. As pointed out

above, the only information one could possibly ascribe to the contact with Hall was the obtaining of the stolen videocassette recorder. Inasmuch as Garris had already furnished the police with the information concerning the various burglaries and the robbery, it cannot be said that the acquisition of the videocassette recorder supplied the police with information they did not already have, and therefore appellant has not demonstrated harm as a result of the so-called poison tree.

Appellant claims the State did not carry its burden of proving guilt beyond a reasonable doubt. Making this claim, appellant takes the position that had it not been for the alleged illegal conference between Garris and appellant after his arrest there would be no evidence to support his conviction. As we have above pointed out, the information gained by that interview was minimal at best and only repetitious of information which Garris had furnished the police independent of the interview following appellant's arrest.

■ Appellant does raise the additional question that there was insufficient evidence that he was in possession of a gun at the time he robbed the Hudson filling station, which resulted in the instant conviction. However, the witnesses who were the victims of the robbery at the filling station testified that they could see the handle of a gun protruding from appellant's pocket as he entered the station, at which time both victims fled the scene. However, the woman left her purse containing $45 and a pink cigarette lighter which was taken by appellant.

Garris testified that appellant later told her he robbed the filling station and gave her the pink cigarette lighter which he had obtained from the purse of one of the victims. She also testified that appellant told her that as he entered the filling station and pulled the gun from his pocket, both of his intended victims fled the station. This was sufficient evidence to support the jury's verdict of guilty of robbery while armed. There is ample evidence in this record to support the various convictions.

Appellant claims that even if this Court should decide that no one error is sufficient to cause reversal, that when all errors are placed together, the combination of errors should result in a reversal. This Court previously has held that where none of the single allegations of error sufficed to require reversal, this Court will not use the combination of errors to arrive at reversal. *Halbig v. State* (1988), Ind., 525 N.E.2d 288.

■ Appellant claims the trial court erred in aggravating appellant's sentence for robbery, based on the use of a handgun. However, the record reveals that the trial court based his enhancement of the sentences on various criteria including a past juvenile record and the fact that appellant had been convicted and incarcerated for the crime of burglary in 1981 and was on a six-year probationary term at the time he had committed the offenses in the instant case. Thus there is ample evidence in this record to sustain the trial judge's decision to enhance the sentences.

The trial court is affirmed.

SHEPARD, C.J. and PIVARNIK, J., concur.

DeBRULER, J., concurs in result without separate opinion.

DICKSON, J., dissents without separate opinion.